# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MOCHE L. GREER,**

                **Plaintiff,**

  v.                                             **Case No. 24-CV-976**

**DUSTIN BITTNER, *et al.*,**

                **Defendants.**

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Moche L. Greer, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Greer was allowed to proceed on a claim against defendant Dustin Bittner pursuant to the Eighth Amendment for alleged sexual harassment. He was also allowed to proceed on claims against defendants Warden Randall Hepp and Deputy Warden Emily Propson under a theory of supervisor liability for allegedly failing to prevent Bittner's continued harassment. The defendants filed a motion for summary judgment on the grounds that Greer failed to exhaust his administrative remedies before filing this lawsuit. (ECF No. 16.)

The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 13.) The motion is fully briefed and ready for a decision.

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a prisoner must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code

3

§ DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet the filing requirements, including if the it contains more than one issue. Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days in which to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the corrections complaint examiner. Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the ICE

acknowledged receipt of the inmate complaint, he may appeal to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.11(3).

The corrections complaint examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The corrections complaint examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the corrections complaint examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the corrections complaint examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

Also relevant here is the process for inmate complaints under the Prison Rape Elimination Act (PREA), contained in Wis. Admin. Code § DOC.310.08. This process applies when an inmate complaint concerns sexual abuse or sexual harassment. Where a prisoner has a complaint about sexual abuse or sexual harassment, the time limits contained in Wis. Admin. Code § DOC 310.07 (2) (requiring prisoners to file complaints within 14 days of the incident) do not apply, and prisoners may file inmate complaints concerning sexual abuse or sexual harassment at any time. Wis. Admin. Code § 310.08(1). Prisoners also do not have to attempt to informally resolve the issue with the staff member who they are complaining about and an "inmate may use an alternative method of filing, including submission of the complaint directly to the

5

warden." Wis. Admin. Code § 310.08(2).

Any complaints filed under this section are "referred for a PREA investigation, and such an investigation will "be completed within established time frames." Wis. Admin. Code § 310.08(3). Also, any third party, including staff members, other prisoners, family members or outside advocates can assist a prisoner "in filing a request for administrative remedies relating to allegations of sexual abuse or sexual harassment and shall be permitted to file such requests on behalf of inmates." Wis. Admin. Code. § 310.08(4). The section also specifies that "[t]ime frames are waived for PREA related complaints, this does not apply to PREA related complaint appeals." Wis. Admin. Code § 310.08(7).

*Greer's Allegations and Attempts to Exhaust his Administrative Remedies*

Greer alleges that on March 11, 2023, while he was washing up in his cell with the privacy curtain drawn, defendant Bittner pulled Greer's curtain aside, telling him, "I want to see your dick." (ECF No. 1 at 2.) Greer submitted a PREA complaint that same day using the PREA report victim phone line. (ECF No. 26, ¶ 6.) Greer also submitted inmate complaint WCI-2023-3845, which was received by the ICE on March 17, 2023. (ECF No. 19-2 at 6.) In the inmate complaint he states that Bittner pulled down his curtain and told Greer to let him see his genitals. (*Id.*) The ICE "immediately referred" the inmate complaint to the Warden's office "for further processing in accordance with Executive Directive 72." (*Id.* at 4.) The defendants do not explain what Executive Directive 72 is. Greer states it is the directive from the Governor of the State of Wisconsin that underpins Wis. Admin.

6

Code § DOC 310.

Upon reviewing the ICE's recommendation to dismiss the inmate complaint, the reviewing authority noted that "[a] copy of this complaint has been provided to the PREA Compliance Managers to determine if the initial handling of Mr. Greer's complaints were appropriately addressed and to establish what, if any, next steps are appropriate," and dismissed the complaint. (ECF No. 19-2 at 4.) The defendants note that Greer did not mention filing a PREA report in his inmate complaint. (ECF No. 18, ¶ 7.) They also state that Greer did not appeal the dismissal of his inmate complaint, which they contend is required by the ICRS process. (*Id.*, ¶ 10.)

Greer also asserts that on March 11 and 12, 2023, he wrote "inmate requests" to non-defendant Captain Kind and Warden Hepp regarding the March 11, 2023, incident. (ECF No. 26, ¶ 7.) On March 13, 2023, both Kind and Hepp came to speak to Greer, and Hepp specifically told Greer that he would take the matter seriously and ensure a PREA investigation occurs. (*Id.*) Greer further asserts that for the remainder of March and parts of April he wrote "countless requests to Warden Hepp" for an update on the PREA investigation but received no response. (*Id.*, ¶ 8.) However, Greer does not provide copies of these requests.

On March 29, 2023, the ICE received inmate complaint WCI-2023-4422, wherein Greer complained that, after he filed inmate complaint WCI-2023-3845, Bittner retaliated against Greer by giving him a conduct report for disruptive and disrespectful behavior. (ECF No. 19-3 at 6.) Greer mentions that he filed a PREA report in conjunction with the first inmate complaint. (*Id.*) The ICE rejected the

7

inmate complaint because there was a pending disciplinary investigation, and Greer was challenging the factual basis for the issuance of the conduct report—which would be dealt with during the disciplinary process. (*Id.* at 4.) Greer did not appeal the rejection. (ECF No. 18, ¶ 15.)

On May 19, 2023, defendant Deputy Warden Propson told Greer that she would shortly be writing him regarding the status of his PREA investigation. (ECF No. 26, ¶ 9.) She also told him that the investigation was going to be closed because it did not constitute harassment as it was an "isolated incident" and not "repetitive conduct". (*Id.*) Greer told Propson that he did not feel comfortable being around Bittner, to which Propson responded that, if Greer had "any issue, you email me directly through the services provided on your ATG tablet." (*Id.*)

On May 21, 2023, Bittner walked past Greer's cell, stating "Dick, dick, dick", and Greer states he emailed Propson directly on his tablet immediately. (ECF No. 26, ¶ 10.) The next day, Greer filed another PREA complaint through the hotline. (*Id.*)

On August 8, 2023, Greer was again washing up using his privacy curtain, and Bittner told him to take his curtain down. (ECF No. 26, ¶ 11.) Bittner also stated to Greer, "Again, let me see it" and pushed Greer's curtain down. (*Id.*) The following day, August 9, 2023, Greer filed another PREA complaint through the hotline. (*Id.*, ¶ 12.) He also emailed Propson, asking her to save the surveillance video that captured the incident. (*Id.*; ECF No. 1-1 at 24.)

Greer provides copies of several emails[1] he sent to Propson between July and September 2023, informing Propson of incidents with Bittner, questioning how Bittner was still allowed to work on Greer's housing unit, asking for details regarding why the investigation into the March PREA complaint was closed, and asking for updates on other PREA complaints. (ECF No. 1-1; ECF No. 26-1.) Greer asserts that Hepp and Propson mostly ignored him, so he sought help from his staff psychologist and the institution's chaplain, whose names he did not provide. (ECF No. 26, ¶ 15.) However, he did provide evidence from both the staff psychologist and the chaplain wherein they both stated they talked with him about the incidents. (ECF No. 26-1, at 43-45.) Greer also notes that, in response to his email to Propson about the May 19, 2025, incident, she responded by telling him that the information would be "attached to the first PREA report from 3/11/25." (ECF No. 26, ¶ 16.) Ultimately, though, Greer never received any information regarding the status of his PREA complaints, despite asking for it several times. (*Id.*, ¶ 19.) He even wrote the prison litigation specialist for information, and as of April, 2025, still does not know how the formal PREA investigation was resolved. (*Id.*)

*Analysis*

The defendants argue that, by not appealing his grievance, Greer failed to exhaust his administrative remedies.

---

[1] Greer notes that, due to the nature of the access he has to his emails to staff, he cannot provide Propson's responses to his emails. The defendants did not provide the responses.

The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Greer argues that, because his inmate complaint was immediately referred for a PREA investigation, he believed that exhaustion had to occur through that process. He also asserts that Wis. Admin. Code § DOC 310.08 provides for alternative methods to exhaust complaints about sexual harassment and sexual assault. The Seventh Circuit does not appear to have addressed the issue of whether the PREA process is an alternative process by which a prisoner may exhaust his administrative remedies as required by the PLRA. But district courts within the Seventh Circuit appear to generally find that a PREA investigation is not a full substitute for the inmate grievance system. *See Poventud v. Saldaris*, Case No. 18-CV-532, 2020 WL 1046095 at *3 (W.D. Wis. March 4, 2020) (listing cases).

However, while the PREA process is not a full substitute for the ICRS, the defendants still carry the burden of demonstrating that Greer failed to exhaust his administrative remedies. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Merely stating that Greer failed to appeal through the usual manner does not fulfill the defendants' burden. The plain language of Wis. Admin. Code § DOC 310.08 modifies the ICRS process. Grievances pertaining to sexual assault or sexual harassment are

10

referred for a PREA investigation to a PREA investigator, so they are not investigated directly by the ICE. Wis. Admin. Code § 310.08(3). Also, prisoners may file complaints or grievances through alternative channels, including but not limited to sending the grievance to the Warden directly. Wis. Admin. Code § 310.08(2). While the code states that time frames for appeals related to PREA-related complaints are not waived, it is otherwise silent on what is required to appeal a PREA decision. Wis. Admin. Code § 310.08(7).

Notably, the defendants did not dispute any of the evidence contained in Greer's declaration. As such, it is undisputed that Greer filed an inmate complaint with the ICE, who pursuant to Wis. Admin. Code § 310.08 referred it for a PREA investigation. It is also undisputed that Greer was never informed of the outcome of the PREA investigation.

It is well-established that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016). "The PLRA 'does not invite prison and jail staff to pose guessing games for prisoners.'" *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Hill*, 817 F.3d 1040)). Additionally, where the process is "so opaque that it becomes, practically speaking, incapable of use'", administrative remedies become unavailable. *Id.*

The defendants have not provided evidence that Greer knew he needed to appeal his inmate grievance through the typical channels nor do they dispute that Greer went through a significant amount of effort to attempt to exhaust his

11

administrative remedies. The defendants argue that Greer should have known that, when the reviewing authority dismissed the inmate complaint, he was required to appeal through the normal process. However, the reviewing authority's language in the dismissal suggests otherwise, stating that Greer's inmate complaint was sent to the PREA Compliance Managers "to determine if the initial handling of Mr. Greer's complaints were appropriately addressed and to establish, *what, if any, next steps are appropriate.*" (ECF No. 19-2 at 4.) (emphasis added). This suggests that Greer needed to wait to hear from the PREA investigator or someone with like authority for the outcome of the PREA investigation before he could appeal. This makes sense, given that the inmate complaint was not dismissed after an investigation of the substance of Greer's grievance but because it was being investigated through a different channel. The language of the reviewing authority's dismissal communicated that the substantive investigation was ongoing, and Greer asserts this is why he did not appeal once he received the dismissal. He was waiting to receive the outcome of the PREA investigation.

It is also undisputed that Propson told him she would provide him information about the outcome of the PREA investigation, but neither she nor Hepp ever did, despite Greer's numerous requests. In fact, as of the filing of this motion, Greer is still unclear on the outcome of his PREA investigation. Where the regulations do "not instruct a prisoner on what to do when prison officials [do] not answer his grievance" and the evidence shows that the prisoner had done everything reasonable in his power to attempt to exhaust his administrative remedies, then the prisoner has

12

exhausted. *Dole*, 438 F.3d at 811 (discussing *Brengettey v. Horton*, 423 F.3d 674 (7th Cir. 2005)). Additionally, Hepp's and Propson's statements to Greer show that they told Greer to communicate directly with them about his PREA issues, which according to the undisputed evidence is exactly what Greer did.

The defendants also argue that Greer never mentioned that Hepp or Propson failed to stop further harassment in his inmate complaints, and as such he failed to exhaust his administrative remedies against them. However, because Wis. Admin. Code § DOC 310.08 allows Greer to bring his PREA issues directly to them for exhaustion, and the undisputed evidence shows Greer did so for all three instances of alleged sexual harassment, his inmate complaint did not need to mention them to properly exhaust, nor did he need to file separate inmate grievances through the ICRS.

The defendants did not demonstrate that the exhaustion process as modified by the PREA process contained in Wis. Admin. Code § 310.08 was available to Greer because they did not demonstrate that Greer knew of or was informed of what the full appropriate process was. They also do not dispute that Greer followed the process and directives he was given regarding exhaustion to the best of his ability. As such, their motion for summary judgment on exhaustion grounds is denied.

## CONCLUSION

For the reasons stated above, the defendants' motion for exhaustion of administrative remedies on exhaustion grounds is denied. The court will issue an amended scheduling order at a later date to move the case forward.

13

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment on exhaustion grounds (ECF No. 16) is **DENIED**.

Dated at Milwaukee, Wisconsin this 18th day of July, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge