UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MOCHE L. GREER,**

**Plaintiff,**

**v.** **Case No. 24-CV-976**

**DUSTIN BITTNER, *et al.*,**

**Defendants.**

---

**DECISION AND ORDER**

---

Plaintiff Moche L. Greer, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Greer was allowed to proceed on a claim under the Eighth Amendment because defendant Dustin Bittner allegedly made sexually suggestive comments toward him. Greer was also allowed to proceed against Warden Randall Hepp and Deputy Warden Emily Propson (n/k/a Emily Westover) because they allegedly made no efforts to protect Greer from additional harassment. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 50.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 13.)

## FACTS

At all times relevant Greer was housed at Waupun Correctional Institution. (ECF No. 68, ¶ 3.) Hepp was the Warden at Waupun and Westover was the Deputy Warden. (ECF No. 52, ¶¶ 1, 4.) Bittner worked as a correctional officer at Waupun. (*Id.*, ¶ 6.)

Greer alleges that on March 11, 2023, he was washing up in his cell around the time Bittner was conducting 5 p.m. count. (ECF No. 1 at 2.) Greer had a curtain hanging on his cell door for privacy. (*Id.*) Bittner instructed Greer to remove the curtain, but Greer refused because he was washing up. (*Id.*) Greer states that Bittner then said, "if you're washing up, then I want to see your dick" and pulled Greer's curtain down. (*Id.*)

Bittner states that he interacted with Greer around 7:50 p.m. on March 11, 2023. (ECF No. 52, ¶ 49.) He states that, as he approached Greer's cell, Greer yelled, "I should throw piss, shit, and magic shave at your gay ass." (*Id.*, ¶ 50.) Greer also yelled at Bittner, "I called PREA [Prison Rape Elimination Act] on your gay ass" and "get the fuck away from my cell you homosexual." (*Id.*, ¶ 51.) Bittner does not recall whether Greer had his cell covered at the time. (*Id.*) Bittner states that, if the cell was covered, he would have instructed Greer to remove the cover per safety procedures and policies because prisoners cannot use covers to obstruct the view into their cell, even if they are washing up. (*Id.*, ¶¶ 37, 52.) Bittner further asserts that he would never have said to a prisoner "let me see your dick." (*Id.*, ¶ 54.)

Greer states that, after this incident, he called PREA to report it and also filled out an inmate complaint. (ECF No. 1 at 2.) On March 13, 2023, Greer approached Hepp and non-defendant Captain Kinard and told them about the March 11 incident. (ECF No. 68, ¶ 14.) According to Greer, Hepp stated that he received Greer's complaint, assured him that the incident was "a serious matter" and explained that he would need to send it to the PREA coordinator for review. (*Id.*) Hepp also told Greer that "this is not

my first complaint about this C.O." (*Id.*, ¶ 15.) Hepp states he does not recall speaking with Greer on March 13, 2023. (ECF No. 52, ¶ 61.)

On May 21, 2023, Greer alleges that Bittner, during third-shift rounds, "walked past Greer's cell looking and began saying 'dick, dick, dick'". (ECF No. 1 at 2.) The defendants state that Bittner was not working at Waupun that day and instead was off-site working as the "Waupun Memorial Hospital Officer". (ECF No. 65 at 2; ECF No. 52, ¶ 56.) Greer states that he had the date wrong in his complaint and instead the incident happened on May 19, 2023, during third-shift rounds. (ECF No. 68, ¶ 8.)

Greer asserts that he also had a conversation with Westover on May 19, 2023, during modified recreation time (prior to the second incident with Bittner) wherein he asked her whether Hepp received any of Greer's requests about assigning Bittner to work in a different housing unit or preventing him from working around Greer. (ECF No. 65 at 5.) Westover told Greer that the PREA coordinator emailed about Greer's March 11 complaint, stating that, because it was not a repetitive incident, it was not harassment. (ECF No. 1 at 2.) Westover told Greer that, if there are any additional problems with Bittner, Greer should email her directly. (ECF No. 65 at 5.)

After the second incident occurred later that night, Greer emailed Westover and described the second incident. (ECF No. 1 at 2-3.) He asked Westover if Bittner could be removed from working on Greer's housing unit. (*Id.* at 3.) Westover "responded without addressing Greer's question or taking any action to prevent a third incident." (*Id.*)

Greer further alleges that on August 8, 2023, around 8:30 p.m., as Greer was washing up before count, Bittner told Greer to remove his privacy curtain and, when

Greer protested, Bittner said, “Let me see it again” and pulled Greer’s curtain down. (ECF No. 1 at 2.) Greer filed another PREA report the same day. (*Id.*) The defendants assert that the incident actually occurred on July 9, 2023. (ECF No. 52, ¶ 58.) In his response materials to the motion for summary judgment, Greer adopts the July 9 date without amending his complaint. (ECF No. 68, ¶ 9.)

Westover asserts that she received an email from Greer referencing a conversation they had at recreation time and reporting that a third incident happened on July 9, 2023. (ECF No. 52, ¶ 76.) Westover responded to the email on July 15, 2023, informing Greer that she had spoken with the PREA coordinator and the incident was referred for a PREA investigation. (*Id.*, ¶ 77.) On July 30, 2023, Westover received a message from Greer asking about the status of the PREA investigation, and Westover responded that she cannot comment on ongoing investigations but “I can share that your PREA allegations dated 3/13/23, 5/19/23, and 7/9/23 were reviewed by the Regional PREA Compliance Manager on 7/13/23 and referred for investigation.” (*Id.*, ¶¶ 80-81.) In response, Greer sent four consecutive emails to Westover on July 31, 2023, questioning the management of the PREA investigation and complaining that no one had come to interview him about the incidents. (*Id.*, ¶¶ 83-86.) Westover responded that she could not speak to the details of any investigation. (*Id.*, ¶ 87.)

Greer states that, as a result of these incidents, he “had to confide in the institution’s chaplain and psych specialist.” (ECF No. 68, ¶ 18.) However, Greer does not include any information about any potential diagnoses or other mental health issues

he experienced. He also states that his "conduct has shifted. I'm more defensive, some may say combative towards staff." (*Id.*, ¶ 20.)

Hepp asserts that his involvement in Greer's complaint was limited to when he acted as the Reviewing Authority for Greer's inmate complaint about the March 13 incident. (ECF No. 52, ¶¶ 67-69.) Hepp also states he issued a letter to Bittner at the conclusion of the July 2023 internal PREA investigation wherein he informed Bittner that no disciplinary action would be taken. (*Id.*, ¶ 74.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive

summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Greer claims that Bittner violated his Eighth Amendment rights when on three occasions he made comments about Greer's penis. Greer claims that Hepp and Westover violated his Eighth Amendment rights when they failed to prevent additional incidents of sexual harassment.

The Eighth Amendment prohibits cruel and unusual punishment, but the Seventh Circuit Court of Appeals has held that "standing alone, simple verbal harassment does not constitute cruel and unusual punishment." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). To rise to the level of a constitutional violation, verbal harassment must be accompanied by something more. In *Beal v. Foster,* 803 F.3d 356, 358 (7th Cir. 2015), the prison officer, in addition to making sexually suggestive comments to the prisoner, allegedly showed the prisoner his own penis and made comments around other prisoners suggesting that the plaintiff was gay. The court determined that these additional actions along with the verbal harassment could have caused severe psychological harm and exposed the plaintiff to the likelihood of sexual assault or other concrete dangers. *Id.*

Taking the facts in a light most favorable to Greer[1], no reasonable factfinder could conclude that Bittner's actions rose to the level of a constitutional violation. While Bittner made comments on three separate occasions, the nature of the comments did not, even in the aggregate, expose Greer to either severe psychological harm or risk of sexual assault. The comment made on May 21, 2023, wherein Bittner allegedly walked past Greer's cell repeatedly saying "dick" does not contain an ask or a command or reference to any sexual act. Regarding the other two incidents in which Bittner allegedly asked to see Greer's penis, there is no evidence that he pressed Greer or followed the comment up with any other actions. "Relationships between prisoners and prison staff are not always marked by genteel language and good manners" and, without evidence that vulgar comments caused severe psychological harm or put Greer in danger of assault or other concrete risk of harm, the comments remain simply vulgar. *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019).

Greer also does not present evidence that he suffered any severe psychological harm or was put in danger because of Bittner's actions. He states that he sought the help of Waupun's chaplain and went to psychological services. But he does not show that he was diagnosed with any sort of mental health disorder caused by Bittner's comments. He merely asserts that his "conduct has shifted," but this is his own speculation. (ECF No. 68, ¶ 20.) While a non-movant is entitled "to all reasonable inferences in her favor,

---

[1] The court notes that Greer had the dates of two of the incidents wrong, and Greer did not amend his complaint to correct those dates. On that basis alone, the court need not consider evidence of the last two incidents. However, even with the correct dates, the actions still do not rise to the level of a constitutional violation.

inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Because Bittner's comments did not rise to the level of a constitutional violation, summary judgment is granted in his favor.

Summary judgment is also granted in favor of Hepp and Westover. For a defendant to be held liable for failing to prevent a constitutional violation, there needs to be an underlying constitutional violation. *Doxtator v. O'Brein*, 39 F.4th 852, 864 (7th Cir. 2022). Because no reasonable factfinder could conclude that Bittner violated Greer's Eighth Amendment rights, no reasonable factfinder could conclude that Hepp and Westover failed to prevent Bittner from violating Greer's Eighth Amendment rights.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they were entitled to qualified immunity. Because the court finds in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 50) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 23rd day of November, 2026.

BY THE COURT

William E. Duffin

WILLIAM E. DUFFIN
United States Magistrate Judge